IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION


ROMA OUTDOOR CREATIONS,   :
INC.,                            :
                              :
     Plaintiff,             :
                              :     CIVIL ACTION
v.                            :     NO. 2:07-CV-133-WCO
                              :
CITY OF CUMMING, GEORGIA,   :
and SCOTT MORGAN, in his official :
capacity as Director of the City's   :
Planning and Zoning Department,   :
                              :
     Defendants.          :


## ORDER

The captioned case is before the court for consideration of defendants'

motion to exclude the testimony of Kurt McLaughlin [35-1], plaintiff's motion for

partial summary judgment [36-1], and defendants' motion for summary judgment

[37-1].

## I.     Introduction

This case arises out of plaintiff's attempt to secure permits to erect two

advertising signs in Cumming, Georgia (the "City"). Neither of plaintiff's

proposed signs adhered to the requirements of the City's sign ordinance

("Ordinance"). In May 2007, plaintiff applied to the City for two sign permits and

two variances to the Ordinance. After the City rejected plaintiff's applications, plaintiff sued under 42 U.S.C. § 1983, alleging violations of both the First and Fourteenth Amendments of the United States Constitution and equivalent provisions of the Georgia Constitution. Plaintiff asks the court to grant summary judgment on just one of its claims: that the ordinance constituted an unconstitutional prior restraint on speech.[1] Defendants ask the court to grant summary judgment on all of plaintiff's claims.

## II.    Factual Background

### A.    *The Ordinance*

On September 20, 1983,[2] the City adopted the Ordinance

> for the purposes of promoting the health, safety, morals, convenience, order, prosperity, and the general welfare of the City of Cumming; allowing appropriate advertising and commercial speech in a manner that is not confusing, overcrowded or distracting to the motoring public while at the same time improving the aesthetic appearance of the City of Cumming.[3]

---

[1]  Plaintiff does not seek summary judgment on the question of damages related to this claim.

[2]  The City amended the Ordinance on June 20, 2006. Subsequent to plaintiff's filing of this lawsuit, the City replaced the Ordinance on February 19, 2008 ("New Ordinance").

[3]  The preamble to the (pre-1996 amendment) Ordinance also explains that "the control of such signs will create a need for the display of motorist informational signs which adequately inform motorists . . . of the availability of gas, food, lodging, and camping services." (Ordinance, Ex. A to Pl.'s Statement Mat. Facts 2).

(Ordinance, Ex. A to Pl.'s Statement Mat. Facts, Preamble).  The Ordinance, which required securing a City-issued permit before erecting advertising signs, limited the location and dimensions of all signs erected in the City, (*see id.* §§ I, II, III), and restricted the messages permitted to be advertised on signs to the following:

> 1. Travel Services Facilities[,] including lodging, gas, food, camping;
>
> 2. Areas of Scenic Beauty;
>
> 3. Public Attractions including historic, natural[,] scientific[,] or recreational amenities; and
>
> 4. Any combination of the above listed facilities. Further, the content of all advertising shall be directional in nature.

(*Id.* § III(7)(j)).  Among other physical limitations, section III(7)(c) of the Ordinance required signs to be placed a maximum of thirty (30) feet above adjacent interstate pavement, and section III(7)(f) required that signs be located at least 500 feet apart from the next-closest sign.  The Ordinance authorized the mayor and city council to enforce the sign requirements but did not instruct officials to process permit applications within any particular time frame.

By contrast, the New Ordinance eliminates the advertising limitation that restricted signs to travel service facilities, areas of scenic beauty, and public

attractions. The New Ordinance also imposes a mandatory thirty (30) day processing period for all permit applications and includes timing rules that apply to administrative appeals of application rejections.

B.    *The Applications*

On May 15, 2007, Ralph M. Boyd III, the sole owner of plaintiff, submitted Variance Request Number 070217 and Variance Request Number 070221 to the City. Variance Request Number 070217 sought permission to erect a forty-five (45) foot sign at 908 Buford Highway in violation of Ordinance section III(7)(c), which limited signs to a maximum height of thirty (30) feet. Variance Request Number 070221 sought permission to erect a sign at 889 Buford Highway within 500 feet of a then-existent sign, in violation of the section III(7)(f) separation rule. Plaintiff applied for the latter variance because it recognized that the proposed sign would be located within 500 feet of an existing sign that plaintiff owned. During the application process, plaintiff pledged to relocate the existing sign to avoid the spacing issue. Although both proposed signs would have been located within 500 feet of signs outside the City, neither application requested a variance on those grounds.

The City of Cumming Planning and Zoning Commission planned to consider the variance applications on July 17, 2007. Upon Boyd's request,

however, the City postponed the meeting until August 21, 2007. On August 20, 2007, defendant Scott Morgan, the City's Director of the Department of Planning and Zoning, recommended in a memorandum that the city council deny both of plaintiff's variance applications. On September 18, 2007, Morgan reiterated his recommendation to the Planning and Zoning Commission, and the city council denied the applications on October 16, 2007, on the grounds that both of the proposed signs would be located within 500 feet of the signs located in Forsyth County.[4] Having received variances in the past in the face of what he deemed comparable circumstances, Boyd was surprised by the City's denial of his applications.[5] Nonetheless, Boyd concedes that he did not take the denials personally: "I do not feel that anyone at the [C]ity was mad at me or had a grudge against me." (Boyd Dep., Ex. A to Defs.' Mot. Summ. J. 30-31).

---

[4] Because the City interpreted the spacing requirement to apply to signs located within 500 feet of signs outside the City, plaintiff's offer to relocate its own existing sign located within the City turned out to be irrelevant.

The City also identified a sign advertising several businesses, referred to as a "kiosk" sign, that was located within 500 feet of the proposed sign. The City has subsequently taken the position that the kiosk sign should not have factored into the application of the 500-foot rule.

[5] The City has issued seven sign permits to plaintiff, at least four of which required variances.

## C. *Previous Permit Applications*

Plaintiff's claims require the court to summarize two of the City's past actions on variance applications. In one case, Georgia Outdoor Advertising ("Georgia Outdoor"), in which Boyd held a 30% ownership interest, requested a height variance for a forty-five (45) foot sign.[6] On its variance application, Georgia Outdoor did not indicate that it intended to place the sign within 500 feet of an existing sign that was located outside the City. The City granted that variance. Because there is no record of any public discussion regarding the proximity of the proposed sign to the out-of-city sign or whether the Ordinance spacing rules applied in such circumstances, it is unclear whether the City granted the variance because it interpreted the Ordinance to not apply to out-of-city signs or because it merely overlooked the proximity. The City maintains that it issued the variance in error and that the lapse was probably due to the fact that the map that Georgia Outdoor enclosed with the variance application depicted only the City of Cumming. According to defendants, the City has never approved a

---

[6] The parties offer contrasting accounts of the extent of Boyd's involvement in Georgia Outdoor. Regardless, it is undisputed that Boyd had some role in the company. Because the issue is only relevant to plaintiff's Count One claim under the Equal Protection Clause, and because only defendants moved for summary judgment on that claim, the court views the facts in the light most favorable to plaintiff. Thus, for purposes of defendants' motion for summary judgment on Count One, the court will treat Georgia Outdoor as a wholly distinct entity from plaintiff, despite Boyd's undisputed involvement.

variance application that expressly requested permission to erect a sign within 500 feet of another sign, within the city or not.[7]  The City admits, however, that it usually reviews variance applications to determine whether proposals trigger the need for any unrequested variances.

In another case, Boyd applied for a permit for a sign to be located within 379 feet of an existing sign.  In a letter submitted with the application, Boyd explicitly represented that there did not appear to be any signs within 500 feet of the proposed location.  The City granted the variance.  The City acknowledges that it issued that permit in error, but blames Boyd for misrepresenting (intentionally or not) the supposed absence of any other signs within 500 feet of the proposed site.

D.  *Relevant Procedural History*

On November 15, 2007, plaintiff filed a complaint under 42 U.S.C. § 1983, seeking damages and equitable relief.   In Count One of the complaint, plaintiff claims that the City violated plaintiff's Fourteenth Amendment Equal Protection rights when the City denied plaintiff's variance requests despite having previously granted similar applications in the past.   Plaintiff also claims several First

---

[7]  Boyd admits that the City denied the single separation variance application that he sought before applying for those at issue in this litigation.

Amendment violations. In Count Two, plaintiff alleges that the Ordinance impermissibly vested city officials with unbridled discretion; in Count Three, plaintiff contends that the Ordinance lacked necessary procedural safeguards; and in Count Four, plaintiff reiterates these claims and also charges that the Ordinance improperly favored commercial speech over noncommercial speech. In Count Five, plaintiff argues that the Ordinance violated the Georgia Constitution. On March 18, 2008, defendants moved for partial judgment on the pleadings. The court denied that motion on May 14, 2008.[8] On October 10, 2008, defendants filed a motion to exclude the testimony of Kurt McLaughlin, an expert witness proffered by plaintiff. The case is now before the court on defendants' motion to exclude the testimony of Kurt McLaughin, plaintiff's motion for partial summary judgment, and defendants' motion for summary judgment.

## III.    Discussion

### A.    *Legal Standard*

Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

---

[8] The court did, however, dismiss *sua sponte* Counts Six and Seven, which did not state claims.

entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Only those claims for which there is no need for a factual determination and for which there is a clear legal basis are properly disposed of through summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A court considering a motion for summary judgment must view the evidence in a light most favorable to the nonmoving party. *See Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988). It is important to recognize, however, that this principle does not require the parties to concur on every factual point. Rule 56 "[b]y its very terms . . . provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Consideration of a summary judgment motion does not lessen the burden on the nonmoving party. The nonmoving party still bears the burden of coming forth with sufficient evidence. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990). However, it is important to note the difference "between direct evidence and inferences that may permissibly be drawn from that evidence. Where a nonmovant presents direct evidence that creates a genuine issue of material fact, the only issue is one of credibility; thus, there is no legal

issue for the court to decide." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996). On the other hand, "[a] court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, and upon which the nonmovant relies, are 'implausible.'" *Id.* at 743. Adopting language from one of its sister circuits, the Eleventh Circuit explained:

> If the nonmoving party produces direct evidence of a material fact, the court may not assess the credibility of this evidence nor weigh against it any conflicting evidence presented by the moving party. The nonmoving party's evidence must be taken as true. Inferences from the nonmoving party's "specific facts" as to other material facts, however, may be drawn only if they are reasonable in view of other undisputed background or contextual facts and only if such inferences are otherwise permissible under the governing substantive law. This inquiry ensures that a "genuine" issue of material fact exists for the factfinder to resolve at trial.

*Id.* (citation omitted). "Where the evidence is circumstantial, a court may grant summary judgment when it concludes that no reasonable jury may infer from the assumed facts the conclusion upon which the nonmovant's claim rests." *Id.*

### B.   *Justiciability*

Before considering the merits of plaintiff's claims, the court must determine which of the issues presented are justiciable. In this case, the parties dispute

whether plaintiff has standing to assert its claims and whether the repeal of the Ordinance has rendered those claims moot.[9]

## 1.    Standing

Standing "is the threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). "[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A plaintiff who invokes the jurisdiction of a federal court bears the burden of showing "(1) an injury in fact, meaning an injury that is concrete and particularized, and actual or imminent, (2) a causal connection between the injury and the causal conduct, and (3) a likelihood that the injury will be redressed by a favorable decision." *Granite State Outdoor Adver., Inc. v. City of Clearwater*, 351 F.3d 1112, 1116 (11th Cir. 2003). Accordingly, the court must determine whether plaintiff can satisfy all three standing requirements for each of its claims.

---

[9] Despite both parties' conflation of the standing and mootness questions, the court approaches them separately because they represent independent constitutional demands. *See Tanner Adver. Group, L.L.C. v. Fayette County, Ga.*, 451 F.3d 777, 785 (11th Cir. 2006).

a.    Injury in Fact

Plaintiff suffered two legally cognizable injuries.[10]  First, the denial of its

variance applications constitutes an actual, particularized injury.  *See Tinsley*

*Media, LLC v. Pickens County, Ga.*, 203 Fed. Appx. 268, 272 (11th Cir. 2006)

("Tinsley Media has shown 'injury in fact' because it was denied a permit to erect

the billboards."); *Clearwater*, 351 F.3d at 1116.  Second, although there is no

bright-line rule as to what length of delay will create an injury in fact, the court

is satisfied that the City's 154-day processing delay in this case constitutes an

actual, particularized injury.  *See Covenant Media of S.C., LLC v. City of N.*

*Charleston*, 493 F.3d 421, 428 (4th Cir. 2007) ("[T]he injury of not having an

application processed timely is distinct from the injury of ultimate denial of that

application."); *see also Clearwater*, 351 F.3d at 1117 (recognizing implicitly that

a processing delay can constitute a distinct injury but finding no injury based on

lack of time limits when the plaintiff's "permits were denied within a reasonable

time: the same day they were submitted").  Even though plaintiff contributed to

the delayed ruling on the applications, it still suffered an injury because permit

applications are regularly processed far more expeditiously than the City

_____

[10] A single injury may create multiple legal rights.  Likewise, separate injuries may lead a party to raise claims based on the same legal right.  In this case, the injury-claim distinction is important because plaintiff suffered two distinct injuries and, among other claims, alleges that both injuries resulted from First Amendment violations.

processed the applications here.[11] *See, e.g.*, *Tanner Adver. Group*, 451 F.3d at 781 (permit denied same day that applications were filed); *Clearwater*, 351 F.3d at 1117 (same); *Granite State Outdoor Adver. v. City of St. Petersburg, Fla.*, 348 F.3d 1278, 1280 (11th Cir. 2003) (seventeen-day delay). The delayed processing of the applications thus constitutes an injury in fact.

b.      Causation

A party has standing to challenge only those provisions of a law that caused the complained-of injury. *See Clearwater*, 351 F.3d at 1114 (finding that, in the face of the plaintiff's challenge of several provisions of a city ordinance, "the only harm that Granite State has personally suffered is under . . . [the] provision that Granite State's billboards were denied . . . . Thus, Granite State has standing to challenge the constitutionality of *only*" that provision). Here, a causal connection exists between plaintiff's first asserted injury—the denial of its applications—and the alleged violation of the Equal Protection Clause because the City denied the permits on grounds that it failed to invoke in a similar case.

A causal connection also exists between the denial of the applications and the height and separation rules under which the two applications were respectively

_____

[11] Two whole months passed between the date that plaintiff submitted the applications (May 15, 2007) and the date that the Planning and Zoning Commission planned—before Boyd asked for a date change—to consider the applications (July 17, 2007).

rejected. *See id.* That same injury, however, cannot be traced to section III(7)(j) of the Ordinance, which limited sign content to advertisements for travel service facilities, areas of scenic beauty, or public attractions. Because the City did not reject plaintiff's applications under section III(7)(j), plaintiff's injury was not causally related to that section. For that reason, the denial of plaintiff's variance applications did not create standing for plaintiff to challenge the constitutionality of section III(7)(j) on the grounds raised in Counts Two, Three, and Four.

Finally, the court finds no difficulty in recognizing a causal connection between the challenged length of time that it took the City to act on the applications and the failure of the Ordinance to contain a time limit for the processing of applications. If the Ordinance had contained time limits, the City could not have legally delayed the processing of the applications beyond those limits.

c.      Redressability

(1)      Redressability of Plaintiff's Equal Protection Claim (Count One)

Plaintiff argues that the City violated the Equal Protection Clause by denying Variance Application Number 070221, which sought an exception to the requirement that advertising signs be placed at least 500 feet apart, because the City had previously granted another company's application under similar

circumstances.  If plaintiff succeeds on the claim, it will receive the very variance

that it argues the City has unconstitutionally withheld.  Count One is therefore

redressable.

> (2)    Redressability of Plaintiff's Claims Based on the City's Denial of the Variance Applications (Counts Two, Three, and Four)

Although the court has already determined that the lack of a causal

connection between the denial of the applications and plaintiff's First Amendment

claims results in a lack of standing to raise those claims, the court addresses the

claims' redressability both because the parties briefed the issue heavily and

because the redressability analysis only confirms plaintiff's lack of standing.  *See*

*Maverick Media Group, Inc. v. Hillsborough County, Fla.*, 528 F.3d 817, 821

(11th Cir. 2008); *KH Outdoor, L.L.C. v. Clay County, Fla.*, 482 F.3d 1299, 1303

(11th Cir. 2007).  Several federal courts, including the Eleventh Circuit, have

recently concluded that a plaintiff challenging a sign ordinance cannot

demonstrate redressability if the plaintiff's permit applications violate

unchallenged provisions of the ordinance.  *See Clay County*, 482 F.3d at 1303

("Any injury KH Outdoor actually suffered from the billboard and offsite sign

prohibition is not redressible because the applications failed to meet the

requirements of other statutes and regulations not challenged."); *Midwest Media*

*Prop., L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 461 (6th Cir. 2007) ("Having chosen not to challenge the size and height regulations . . . plaintiffs cannot tenably show that success in challenging *other* regulations of the sign ordinance will redress any injury caused by these regulations."); *Advantage Media, L.L.C. v. City of Eden Prarie*, 456 F.3d 793, 801 (8th Cir. 2006) ("[A] favorable decision for Advantage even with respect to those sign code provisions which were factors in the denial of its permit applications would not allow it to build its proposed signs, for these would still violate other unchallenged provisions of the sign code like the restrictions on size, height, location, and setback."); *Covenant Media of Ga., LLC v. City of Lawrenceville, Ga.*, 580 F. Supp. 2d 1313, 1317-18 (N.D. Ga. 2008) ("[C]ourts have consistently held that an outdoor advertiser cannot establish redressability where the advertiser does not 'allege in its complaint or present evidence that it intend[s] to construct signs that might be permitted' under an allegedly unconstitutional ordinance.") (citation omitted). Like the plaintiffs in *Clay County*, *Symmes Township*, and *City of Eden Prarie*, Roma cannot demonstrate redressability because, by Roma's own admission, its proposed signs violated other, *unchallenged* provisions of the sign ordinance.[12] Plaintiff proposed

_____

[12] Plaintiff's blanket challenge to the Ordinance does not allow it to argue that it has specifically challenged the height and separation requirements. *See Lockridge v. City of Oldsmar*, 273 Fed. Appx. 786, 788 n.3 (11th Cir. 2008) ("[The] complaint sought invalidation of the Sign Ordinance in its entirety. However, we will not conclude that [plaintiff] challenged

to erect one sign that exceeded the Ordinance's height limitation by fifty percent and hoped to place a second sign closer to an existing sign than the Ordinance allowed. Because plaintiff has not facially challenged the height or separation requirements, a favorable outcome on plaintiff's First Amendment claims would not alter the end result: plaintiff would not be able to erect either sign, as they do not comport with these provisions.[13] Accordingly, because plaintiff's First Amendment claims arising out of the denial of the variance applications are not redressible, plaintiff lacks standing to raise the merits of those claims.

---

every one of its sections, including those pertaining to height and size restrictions. . . . [Plaintiff's] injury was caused by sections of the Sign Ordinance he challenged expressly, not those he happened to challenge as a result of an inaccurate severability contention."). As in *Lockridge*, plaintiff makes a flawed argument regarding severability, rendering its blanket challenge to the statute unable to compensate for its failure to expressly challenge the height and spacing restrictions. *See City of N. Charleston*, 493 F.3d at 438 ("Severance is a tool for preserving a current statute . . . . But when, as here, the legislative body has repealed a law, there is nothing to preserve, and a severance analysis is inapplicable.").

Nor does plaintiff's prayer for damages make its injury redressible: "[D]amages—just as sign permits—are unavailable to the plaintiff whose sign applications may be denied under an alternative, unchallenged provision of an ordinance." *Hillsborough County*, 528 F.3d at 820 n.3.

[13] To the extent that plaintiff argues that the City denied the variances on other grounds, plaintiff still cannot satisfy the redressability requirement. *See Lockridge*, 273 Fed. Appx. at 789 ("[T]hat the City did not deny [plaintiff's] applications on the basis of height and [separation] is not dispositive. Because it could have, [plaintiff's] injuries are not redressible.").

(3)     Redressability of Plaintiff's Procedural
        Safeguard Claim Based on the Delayed
        Processing of Roma's Applications
        (Count Three)

Plaintiff's claim based on the City's processing delay as the injury is redressible because if plaintiff's claim succeeds, the court may award plaintiff the damages that plaintiff requests in its complaint.[14] *See City of N. Charleston*, 493 F.3d at 428.

In sum, plaintiff alleges two injuries: the denial of its variance applications and the City's delay in processing the applications.  Both injuries are causally related to certain aspects of the Ordinance: the City denied the applications on the basis of the height and separation rules, and the lack of a time limit permitted the City's processing delay.  Plaintiff's Equal Protection claim (Count One), premised on the denial of the applications, is redressible because, if successful, the claim will result in plaintiff being allowed to erect its signs.  Similarly, the time-limit claim (Count Three) is redressible because damages are appropriate if plaintiff is successful. Plaintiff, however, lacks standing to raise First Amendment claims arising from the application denials (Counts Two, Three, and Four) because the

---

[14] The court notes that plaintiff's lack of standing to raise First Amendment claims arising out of the denial of the applications leaves plaintiff without standing to bring any claim that would allow it to obtain the permits it sought.

applications failed to conform to the unchallenged height and separation restrictions, making the claims non-redressible.

2.     Mootness

Defendants also argue that the New Ordinance renders plaintiff's claims moot because the City has repealed the Ordinance and plaintiff does not dispute the constitutionality of the New Ordinance. Additionally, defendants contend that plaintiff's claim for damages is moot because plaintiff lacks either a property interest in the land on which it proposes to erect its signs or a vested right in its permit applications.

"Ordinarily, a challenge to the constitutionality of a statute is mooted by repeal of the statute." *Tanner Adver. Group*, 451 F.3d at 785 (internal quotation marks and citation omitted). Nonetheless, a plaintiff who prays for damages may avoid a mootness determination because the plaintiff seeks retrospective relief, as opposed to challenging only the prospective application of the statute. *See id.* Here, defendants' mootness arguments fail because plaintiff seeks damages. *See id.*; *Clay County*, 482 F.3d at 1303; *Symmes Twp.*, 503 F.3d at 462. Although the City's enactment of a new sign ordinance moots claims for *equitable* relief, plaintiff's request for damages continues to be viable. *See Clay County*, 482 F.3d at 1303. Defendants' arguments regarding plaintiff's property rights and vested

rights also fail. As plaintiff correctly points out, the same argument has been flatly rejected: "The establishment of a vested property right is irrelevant to [a First Amendment or Equal Protection] challenge." *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 903 (9th Cir. 2007) (citing *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 72 (1990)). For the foregoing reasons, plaintiff's claims are not moot.

C.     *Plaintiff's Equal Protection Claim (Count One)*

Plaintiff contends that the City violated the Equal Protection Clause when it denied the permit applications because the City previously granted permits under similar circumstances. In particular, plaintiff focuses on the permit that the City granted to Georgia Outdoor when Georgia Outdoor, like plaintiff here, applied for a height variance—but not a separation variance—for a sign that was to be located within 500 feet of a sign outside the City. Although "zoning decisions will not usually be found by a federal court to implicate constitutional guarantees," *Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1313 (11th Cir. 2006) (internal quotation marks and citation omitted), zoning and other administrative decisions may run afoul of the Equal Protection Clause of the Fourteenth Amendment, which requires the government to treat similarly situated individuals alike. U.S. CONST. amend XIV, § 1. A plaintiff asserting an Equal

Protection claim must show that he is either a member of a protected class or that the defendant intended to treat him differently from others similarly situated without a rational basis for the disparate treatment. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff asserts the latter type of claim, known as a "class of one" claim. In order to be successful, a class of one plaintiff must demonstrate an extremely high level of similarity between the plaintiff and the allegedly similarly situated comparators. *See Campbell*, 434 F.3d at 1314. The Eleventh Circuit requires that the plaintiff's and the proffered comparator's permit applications "be *prima facie* identical in all relevant respects." *Id.* Additionally, because "projects which seek different types of variances are not similarly situated," *id.* (citation omitted), the court must consider all aspects of the applications, including the documentation that the applicants presented in support of their requests. *See id.* at 1315-16.

Plaintiff argues that Georgia Outdoor represents a similarly situated comparator. On the record facing the court, however, it is unclear whether plaintiff and Georgia Outdoor were similarly situated when they applied for sign permits. First, whereas Variance Request Number 070221 sought a separation variance related to an existing sign within the City, the Georgia Outdoor application sought a height variance. Accordingly, the two applications were not

"*prima facie* identical in all relevant respects." *See Campbell*, 434 F.3d at 1314.

Second, although Variance Request Number 070217 and the Georgia Outdoor

application both identified excessive height as the sole nonconforming feature of

their proposals, the record lacks evidence proving that the documentation of the

applications, beyond this superficial similarity, was *prima facie* identical. *See*

*Campbell*, 434 F.3d at 1314; *see also id.* at 1315-16. Without additional evidence,

the court cannot conclude that plaintiff and Georgia Outdoor were similarly

situated.

Even assuming, *arguendo*, that plaintiff has met its burden to show that it

was similarly situated to Georgia Outdoor, plaintiff still must demonstrate that

"there is no rational basis for the difference in treatment." *Olech*, 528 U.S. at 564;

*see also Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001) ("[T]he

burden is upon the challenging party to negative any reasonably conceivable state

of facts that could provide a rational basis . . . .") (internal quotation marks and

citations omitted). The City maintains that it accidentally issued a height variance

to Georgia Outdoor because it did not realize that the proposal also should have

sought a separation variance.

The mistaken application of a law may constitute a rational basis. *See*

*Levin v. City of Palm Beach Gardens*, No. 08-10629, 2008 WL 5264673, at *4

(11th Cir. Dec. 18, 2008). This proposition holds true when the mistake is unequally applied: "The fact that administrators in certain areas may have made errors in the application of the regulations does not mean that the correct evaluation made in [plaintiff's] case violates the Equal Protection Clause." *Cernuda v. Neufeld*, No. 07-15631, 2009 WL 117581, at *5 (11th Cir. Jan. 20, 2009) (citing *Seven Star, Inc. v. United States*, 873 F.2d 225, 227 (9th Cir. 1989)); *Seven Star*, 873 F.2d at 227 ("[E]qual protection principles should not provide any basis for holding that an erroneous application of the law in an earlier case must be repeated in a later one."); *see also Gibb v. City of Friendswood*, No. 07-329, 2007 WL 4326739, at *4 (S.D. Tex. Dec. 6, 2007) (explaining that "a mistake by the City official in applying the exception is simply not a violation of the Fourteenth Amendment" because "negligence rarely rises to the level of a constitutional violation").

Despite insisting that defendants applied "previously non-existent criteria" in an unconstitutional manner, plaintiff offers no evidence to meet its burden of demonstrating that the City lacked a rational basis for denying the applications. (Compl. ¶ 29). To the contrary, the City has offered what the Eleventh Circuit deems a perfectly rational basis: the City mistakenly issued the earlier permits to Georgia Outdoor and Boyd. By failing to meet its burden of proving that the City

lacked a rational basis for the disparate treatment, plaintiff cannot establish a violation of the Equal Protection Clause and, accordingly, the court must grant defendants' motion for summary judgment on Count One.

D. *Plaintiff's Procedural Safeguards Claim (Count Three)*

Plaintiff argues that the Ordinance constituted an unconstitutional prior restraint on speech because it was a content-based regulation that lacked time limits within which the City had to process permit applications.[15] "[W]hen a plaintiff mounts a facial challenge to a statute or regulation, the plaintiff bears the burden of proving that the law could never be applied in a constitutional manner." *DA Mortgage, Inc. v. City of Miami Beach*, 486 F.3d 1254, 1262 (11th Cir. 2007) (citation omitted). Thus, if a facial challenge succeeds, then *a fortiori*, an as-applied challenge to the same provision also succeeds. Here, plaintiff attempts to leverage the injury resulting from the City's processing delay into both facial and as-applied challenges.[16] Because the court holds the Ordinance unconstitutional

_____

[15] Plaintiff also challenges the Ordinance's alleged grant of unbridled discretion to City officials (Count Two) and argues that the Ordinance favored commercial over noncommerical speech in violation of the First Amendment (Count Four). As discussed previously, however, the only relevant redressible injury is the City's delay in processing the applications. Accordingly, plaintiff's claim based on the lack of time limits (Count Three) is the only First Amendment claim properly before the court. *See City of N. Charleston*, 493 F.3d at 429.

[16] Plaintiff's briefing on the issue of time limits does not expressly indicate an intention to bring both a facial and an as-applied challenge. Nonetheless, the court interprets plaintiff's claim as stating both facial and as-applied challenges. *Cf. DA Mortgage*, 486 F.3d at 1261-62 ("Although L.C. argues . . . that it is challenging the constitutionality of the County noise

on its face, the court need not analyze separately whether the City applied the Ordinance unconstitutionally.

The success of plaintiff's facial challenge to the Ordinance depends on whether the lack of a time limit renders the Ordinance an unconstitutional prior restraint on speech. Because a law that "den[ies] access to a forum for expression before the expression occurs"constitutes a prior restraint on speech, *United States v. Frandsen*, 212 F.3d 1231, 1236-37 (11th Cir. 2000), it is well settled that sign-permitting ordinances are prior restraints. *See Café Erotica of Fla., Inc. v. St. Johns County*, 360 F.3d 1274, 1282 (11th Cir. 2004). Prior restraints, however, "are not unconstitutional per se." *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558 (1975). Rather, the constitutionality of the Ordinance depends on whether it was content-based or content-neutral, because "time limits are required when their lack could result in *censorship* of certain viewpoints or ideas . . . but are not categorically required when the permitting scheme is content-neutral." *Clearwater*, 351 F.3d at 1118 (citations omitted); *see also Thomas v. Chi. Park Dist.*, 534 U.S. 316, 322 (2002); *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 230 (1990); *Freedman v. Maryland*, 380 U.S. 51, 59 (1965).

_____

ordinance either facially or as applied, . . . we examine the plaintiff's cause of action for what it actually is, not for what the plaintiff would have it be.").

As a general matter, rules intended to further aesthetic and safety goals are content-neutral. *See, e.g.*, *City of Ladue*, 512 U.S. at 49-50. Specifically, "[s]ize and height restrictions on billboards are evaluated as content-neutral time, place and manner restrictions." *Get Outdoors II, LLC v. City of San Diego, Cal.*, 506 F.3d 886, 893 (9th Cir. 2007) (citations omitted). Here, the City insists that it denied plaintiff's applications because they violated height and separation rules and that those rules are content-neutral. The court agrees that the height and separation rules are content-neutral. Because the injury from which plaintiff's time-limit claim arises is the processing delay, however, and not the denial of the applications, the court must consider whether the Ordinance *as a whole* was content-based, rather than evaluating only the provisions under which the applications were denied. *See City of N. Charleston*, 493 F.3d at 432-33.

An ordinance is content-based if it classifies speech based on the message conveyed. *See Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 512 (1981). In *Metromedia*, a plurality of Supreme Court Justices explained that "[i]nsofar as [a] city tolerates billboards at all, . . . [a] city may not conclude that the communication of commercial information concerning goods and services connected with a particular site is of greater value than the communication of

noncommercial messages."[17] 453 U.S. at 513. In *Metromedia*, the Court found an ordinance to be content-based when it exempted signs that, *inter alia*, "carry or display religious symbols, commemorative plaques of recognized historical societies and organizations, signs carrying news items or telling the time or temperature, signs erected in discharge of any governmental function, or temporary political campaign signs."[18] *Id.* at 514. Similarly, this court found an ordinance to be content-based when it allowed only "signs that promoted or directed travelers 'to a major historical, scenic[,] or commerical attraction located within Lumpkin County.'" *Action Outdoor Adver. II, LLC v. Lumpkin County, Ga.*, 543 F. Supp. 2d 1334, 1338 (N.D. Ga. 2008) (O'Kelley, J.) (quoting the relevant ordinance).

The court finds that the Ordinance was content-based. Like the ordinances in *Metromedia* and *Lumpkin County*, which restricted signage to certain categories of messages, the Ordinance impermissibly limited the content of signs to those advertising travel service facilities "including lodging, gas, food, [and] camping,"

---

[17] The Eleventh Circuit has expressly adopted the reasoning of the *Metromedia* plurality. *Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1261 (11th Cir. 2005) (citing *Dimmitt v. City of Clearwater*, 985 F.2d 1565, 1569 (11th Cir. 1993)).

[18] Here, the Ordinance did not exempt certain categories of signs from an otherwise-wholesale prohibition, as was the case in *Metromedia*. Instead, the Ordinance limited the permissible types of signs. That distinction, however, is irrelevant, because whether "content-based restrictions are cast as regulations or exemptions is simply a matter of semantics." *Solantic*, 410 F.3d at 1264 n.13.

areas of scenic beauty, public attractions "including historic, natural[,] scientific[,] or recreational amenities," or any combination of the permitted types of content. (Ordinance, Ex. A to Pl.'s Statement Material Facts § III(7)(j)). Defendants argue that the Ordinance was content-neutral because it did "not require the City to make a value judgment with reference to the content of the message included on a given sign." (Defs.' Mot. Summ. J. 15). By limiting signs to a few enumerated purposes, however, the City did make judgments based on content. For example, the City permitted signs advertising a gas station[19] or golf course[20] but prohibited signs advertising a car company or golf clubs. *Cf. Lumpkin County*, 543 F. Supp. 2d at 1349 ("Signs sponsored by public agencies, chambers of commerce, and historical societies can be just as noxious to aesthetics and dangerous to drivers as those sponsored by . . . any other person or entity."). By requiring City administrators to consider the message to be communicated by a proposed sign as part of the permitting process, the Ordinance represents a *prima facie* content-based regulation.[21]

---

[19] Section III(7)(j)(1) permits signs advertising "[t]ravel [s]ervice [f]acilities[,] including . . . gas."

[20] Section III(7)(j)(3) permits signs advertising, *inter alia*, "recreational amenities."

[21] Citing *Lamar Advertising Co. v. City of Douglasville, Georgia*, 254 F. Supp. 2d 1321, 1333-34 (N.D. Ga. 2003), defendants argue that "[t]he inclusion of the 'content' in the ordinance, absent the censorship component[,] fails to constitute a prior restraint." (Defs.' Resp. Pl.'s Mot. Partial Summ. J. 13). Because any sign-permitting requirement is a prior

The City also argues that the "variance application requirements make no reference to the content of the sign." (Def.'s Mot. Summ. J. 15). That fact, however, is unimportant and unresponsive to plaintiff's argument. Because the court finds that the Ordinance was content-based and lacked time limits, plaintiff is entitled to summary judgment on Count Three to the extent that it asserts a violation of the First Amendment based on the lack of a time limit in the Ordinance.

E.   *Plaintiff's Claims Under the Georgia Constitution (Count Five)*

Although Count Five alleges that defendants violated plaintiff's rights under the Georgia Constitution, neither plaintiff nor defendants addresses that claim in their summary judgment briefs. "[I]n analyzing sign ordinances, Georgia courts have consistently applied United States Supreme Court precedent, drawing no analytical distinction between the state and federal constitutions." *City of Douglasville*, 254 F. Supp. 2d at 1334 (citing *State v. Café Erotica, Inc.*, 270 Ga. 97 (1998); *Union City Bd. of Zoning Appeals v. Justice Outdoor Displays, Inc.*,

restraint, the court assumes that defendants mean to argue that the Ordinance did not constitute an *unconstitutional* prior restraint. That argument, however, fails because the Ordinance expressly limited the types of advertising signs that City employees had the authority to approve, thus necessitating permit applicants to identify the message that they intended to display. In *City of Douglasville*, that key requirement was absent: "Nowhere in the permit application process does the City require revelation of the content of the proposed sign." 254 F. Supp. 2d at 1333-34.

266 Ga. 393 (1996); *H & H Operations, Inc. v. City of Peachtree City*, 248 Ga. 500 (1981)). For that reason, separate analysis under the Georgia Constitution will "not change the court's prior analysis" and, accordingly, is unnecessary. *Id.* (citing *Southlake Prop. Assocs., Ltd. v. City of Morrow*, 112 F.3d 1114 (11th Cir. 1997); *Outdoor Sys., Inc. v. City of Atlanta*, 885 F. Supp. 1572, 1584 (N.D. Ga. 1995) (O'Kelley, J.)).

F. *Defendants' Motion to Exclude Testimony of Kurt McLaughlin*

Defendants ask the court to exclude the testimony of Kurt McLaughlin, an expert witness proffered by plaintiff. In his Rule 26 expert witness report, McLaughlin explains that "I am serving as an expert witness regarding the amount of damages incurred by [plaintiff] as a result of the City of Cumming, Georgia's improper denial of Plaintiff's sign applications." (Ex. C to Defs.' Mot. Exclude 1). Following entry of this order, however, the only damages that need to be proven relate to the City's delay in processing the applications, rather than those related to the denial of the applications. Because plaintiff intended McLaughlin to testify to damages that are not warranted, the court need not reach the merits of defendants' motion to exclude McLaughlin's testimony.

G.    *Damages & Attorney's Fees*

Pursuant to 42 U.S.C. §§ 1983 and 1988, plaintiff seeks damages, attorney's fees, and costs.   "[W]hatever the constitutional basis for § 1983 liability, [any] damages must always be designed to compensate injuries caused by the constitutional deprivation."  *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 309 (1986) (quotation marks and citation omitted).  Accordingly, when a constitutional violation does not cause actual damages, nominal damages constitute the only relief available.  *See id.* at 308 n.11; *Farrar v. Hobby*, 506 U.S. 103, 112 (1992) ("[N]o compensatory damages may be awarded in a § 1983 suit absent proof of actual injury.").  In this case, a jury must determine whether plaintiff suffered any compensatory damages as a result of the City's delayed processing of plaintiff's applications.

Although § 1988 permits a "prevailing party" to collect costs and attorney's fees stemming from a constitutional violation, the amount of the fee award must correspond to the degree of success achieved by the plaintiff.  *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).  A plaintiff's partial or limited success, therefore, can render an otherwise-reasonable fee unreasonable.  *Id.*  "In some circumstances, even a plaintiff who formally 'prevails' under § 1983 should receive no attorney's fees at all.  A party who seeks compensatory damages but

receives no more than nominal damages is often such a prevailing party." *Farrar*, 506 U.S. at 115. "This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Hensley*, 461 U.S. at 436. Because plaintiff's entitlement to compensatory damages must be determined by a jury, the court is unable to ascertain the degree of success achieved by plaintiff. Accordingly, under *Hensley* and *Farrar*, the court cannot determine whether plaintiff is entitled to attorney's fees under § 1988. After a jury determines the extent, if any, to which compensatory damages are appropriate, the court will consider the reasonableness of any fee award sought.

## IV.    Conclusion

The court holds that plaintiff has standing to raise its Equal Protection claim (Count One) and its First Amendment claim related to the lack of time limits in the Ordinance (Count Three). The court holds that plaintiff lacks standing to raise the remainder of its First Amendment claims (Count Two and Count Four).

On the merits, the court holds:

(1)    Defendants did not violate the Equal Protection Clause because, assuming *arguendo* that plaintiff identified a similarly situated party treated differently by the City, plaintiff failed to demonstrate that the City lacked a rational basis for the disparate treatment;

(2)     The Ordinance facially violated the First Amendment because it was content-based and lacked a time limit within which the City was required to process permit applications;

(3)     As applied to plaintiff, the lack of a time limit in the Ordinance violated the First Amendment.

For the foregoing reasons, plaintiff's motion for partial summary judgment [36-1] is hereby **GRANTED**.  Defendants' motion for summary judgment [37-1] is hereby **GRANTED in part** and **DENIED in part**.  Defendants' motion to exclude testimony [35-1] is hereby **DENIED as moot**.

IT IS SO ORDERED, this 2nd day of March, 2009.


                                        s/*William C. O'Kelley*
                                        WILLIAM C. O'KELLEY
                                        Senior United States District Judge